JANVRIN and another vs. MAXWELL and another.

STATUTE OF FRAUDS: *Retention of goods by vendor as bailee of purchaser.*

On a sale of chattels which, without delivery, would be void by the statute of frauds, if the vendee constitutes the vendor his bailee of the goods, and the vendor thereafter holds them as such bailee, the delivery is complete, and the sale good *as between the parties.*

APPEAL from the Circuit Court for *Rock* County.

This action was for beef sold and delivered to the defendants. On a reference for trial, the facts found were as follows: 1. In the first week in November, 1862, plaintiffs agreed with defendants to pack for them six barrels of beef at $9 per barrel, but no memorandum of the agreement was made, and no part of the beef was then delivered, and no part of the purchase money paid. 2. About the 15th of the same month, plaintiffs delivered and defendants accepted said beef, in pursuance of the agreement. 3. Plaintiffs stored the beef for the defendants, at their request. 4. By the direction of defendants, plaintiffs sold two barrels of said beef at $7 per barrel, and placed the amount to defendants' credit. 5. Defendants have paid plaintiffs nothing for said beef except the sum of $14 last mentioned. On these facts the referee held defendants indebted to plaintiffs for $40 and interest. Defendants excepted to all the findings of fact except the first, and also to the conclusions of law. The evidence as to the delivery and storage of the beef was as follows: *Mr. Janvrin,* for the plaintiffs, testified that when the beef was ready he sent his son to *Mr. Maxwell's* office for him to come up to plaintiff's shop. "He came to the shop; said he had forgotten all about engaging the beef; said it was all right, that he would take it; it then stood in the front part of my shop; he wanted me to roll it into the back part of the shop and store it for him, and keep it until he took it away; said he did not know that his vessel would

be back again that fall, and if I could sell it for him, I should sell it; that if I sold it for less than he was to give for it, he would make it good; I rolled it back and stored it; he also said that he was a little short of money at that 'time, and in a few days he would pay me; I saw *Mr. Maxwell* several times during the winter, and told him I wished to take the beef away, that I had not room for it; he told me he would pay me for storing and selling it for him." — *Mr. Maxwell*, for the defense, testified: "I told *Mr. Janvrin*, about the 1st of November, that I wanted six barrels of beef to send to Michigan; within a week my vessel would leave Racine, and I wanted to get them on my vessel; he did not have the beef on hand, as I understood him; he did not notify me within the week that the beef was ready; he notified me, I should think, three or four weeks after that, that it was ready; it was not until after the vessel sailed; I never told him to store the beef for me; I never had any conversation with him in reference to selling the beef for my account." On cross-examination he said: "I would not swear positively that I did not say to *Mr. Janvrin*, in the presence of *Mr. Reese* [the other plaintiff], that I did not know whether my vessel would be around again, and request him to store the beef for me, and say that I would pay them for the trouble. I don't think I did say so. I don't think I ever told *Mr. Janvrin* in the presence of *Mr. Reese* to sell the beef for what he could get, and if there was any loss I would make it up to him; I will not swear that I did not; I have no recollection of saying so."

The exceptions to the referee's findings of fact and conclusions of law were overruled, and the report confirmed; and from a judgment in pursuance thereof defendants appealed.

*Todd & Converse*, for appellants, to the point that there was no delivery and acceptance of the beef, taking the case out of the statute of frauds, cited *Hardell v. McClure*, 1 Chand. 271; *Shindler v. Houston*, 1 Com. 261, 269; *Ely v. Ormsby*, 12 Barb.

570 ; *Artcher v. Zeh*, 5 Hill, 200 ; *Baldey v. Parker*, 2 B. & C. 37 ; *Carter v. Toussaint*, 5 B. & Ald. 855 ; 44 Barb. 96 ; 26 id. 472 ; 31 How. Pr. R. 4 ; 32 N. Y. 519 ; 3 Johns. 399 ; 7 Cow. 85 ; 6 Wend. 397.

*R. H. Mills*, for respondents, cited *Terry v. Wheeler*, 25 N. Y. 521 ; *Shindler v. Houston*, 1 N. Y. 261 ; Chitty on Con. 373–90.

PAINE, J. ·If the facts as sworn to by the plaintiffs in regard to a delivery and acceptance of the beef are sufficient to take the contract out of the statute of frauds, then, upon the evidence, we should not feel called upon to disturb the findings of the referee. Whether those facts do take the sale out of the statute, is a question of considerable interest. I was at first strongly inclined to the opinion that they were not sufficient, and that to hold otherwise would render the statute in effect inoperative, as it could be so readily evaded. Parties contract without writing for the sale of goods exceeding fifty dollars in value. There is no payment, and no delivery. The contract is void by the statute. But the vendor says to the vendee, " I deliver the goods ;" and the latter replies, " I accept them, and desire you to store them for me as my bailee," and the contract is good ! It is evident, that, if the false witness, against whom the statute designed to guard, can avoid its effect by merely adding such a conversation to his alleged contract, its provisions can afford little protection. And this view acquires additional significance when considered in connection with the change of the law of evidence, allowing parties to be witnesses.

Yet it is nevertheless true, that, if such a delivery and acceptance are actually made, it satisfies the letter of the statute. And the real question seems to be, whether it is against the policy of the act to allow the vendor to retain possession as the bailee of the purchaser after such delivery. If it is, then the contract was void by the statute. If not, then it was valid.

In *Menzies v. Dodd*, 19 Wis. 343, this court held, that an

*actual* change of possession was necessary in cases falling within the fifth section of chapter 107 R. S. But that was in cases where the controversy arose between the first purchaser and some subsequent purchaser or creditor of the vendor. And the court say there is a distinction between such cases and one where the question arises merely between the vendor and the vendee, implying that in the latter the vendor might by agreement become the bailee of the vendee.

I shall not attempt any extended review of the authorities. But in the following English cases the precise point under consideration has been thoroughly discussed; and they fully sustain the conclusion that there is nothing in the statute that prevents the vendor from becoming the bailee of the purchaser if the parties so agree. And this being so, it becomes then merely a question upon the evidence, whether there was a delivery, an acceptance and a bailment. *Beaumont v. Brengeri,* 57 E. C. L. 301; *Marvin v. Wallis,* 88 id. 726; *Castle v. Sworder,* 6 Hurl. & Nor. 828.

Taking the evidence of the plaintiff as true, there is no question in this case as to the identity of the property, or as to the intent of the parties, on the one side to deliver and on the other to accept, and to change the character in which the vendors should afterward hold it, from that of owners to that of bailees for the defendants. The defendants said they would take the property, and requested the plaintiffs to roll it into the back part of the shop and store it for them, and sell it for them if they had an opportunity; and they subsequently, on being requested by the plaintiffs, promised to send a team and take it away. The purchaser, therefore, gave directions for a specific disposal of the property, thus assuming its control; and their directions were followed by the plaintiffs. Applying to these facts the law established by the cases above cited, I think the judgment should be affirmed.

*By the Court.* — Judgment affirmed.