[Civ. No. 22907. First Dist., Div. One. Oct. 27, 1966.]

A. E. SLOAN et al., Plaintiffs, Cross-defendants and Appellants, v. NAOMA M. HIATT, as Administratrix, etc., Defendant, Cross-complainant and Respondent.

Spurr, Brunner & Nelson and W. H. Brunner for Plaintiffs, Cross-defendants and Appellants.

Leo M. Cook for Defendant, Cross-complainant and Respondent.

SIMS, J.—Plaintiffs and cross-defendants Sloan, hereinafter referred to as landowners, appeal from a judgment which denied them any relief on their complaint for damages for trespass against defendant's intestate, hereinafter referred to as logger, and which awarded defendant and cross-complainant administratrix[1] $63,899.63 damages upon a cross-complaint for breach of a contract for the sale of timber.

From conflicting evidence, the trial court found: "On or about the 24th day of February, 1962, [logger] and [landowners], entered into an oral agreement . . . under the terms of which [landowners] promised and agreed to sell the merchantable timber on the . . . Ranch to [logger] for thirty per cent (30%) of the gross sales price to be received by [logger] from the logs produced therefrom, and [logger] promised and agreed to purchase the merchantable timber on the said ranch on the said terms and to cut, log, remove, and

---

[1]The action was commenced against the decedent who filed his answer and cross-complaint and participated in the trial. Following his death December 28, 1963, after trial but before decision, a stipulation and order were filed substituting the administratrix.

sell the merchantable timber on the said ranch and to pay [landowners] the said thirty per cent (30%) of the gross sales price to be received by him from the sale of the said logs to third party; that it was further agreed between the said parties that removal of said timber would start as soon as practicable; . . ."

The court further found that logger commenced performance under the contract; that landowners breached and repudiated the contract; and that logger suffered damages in the sum for which judgment was awarded.

Landowners do not question the sufficiency of the evidence to sustain these findings if the oral agreement is enforcible. They contend that enforcement of the oral agreement is barred by the statute of frauds. (Civ. Code, §§ 1624a and 1724; and see Code Civ. Proc., § 1973a.)[2]

The trial court found that the statute of frauds was not applicable, and incorporated in the findings a comment that it did not apply because the logger, as buyer, accepted part of the goods by accepting and removing a portion thereof, and because the landowners were estopped to raise that defense.[3]

The only factual matter to which landowners have excepted

---

[2]Civil Code sections 1624a and 1724, and Code of Civil Procedure, section 1973a, read in identical relevant language. Section 1724 reads as follows: "(1) A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards *shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold and actually received the same,* or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in that behalf. (2) . . . (3) There is an acceptance of goods within the meaning of this section *when the buyer, either before or after delivery of the goods,* expresses by words or conduct his assent to becoming the owner of those specific goods." (Italics added.)

These sections were repealed in Stats. 1963, ch. 819, pp. 1997-1998, effective January 1, 1965, and their subject matter is now found in Commercial Code, sections 1206, 2201, 2202 and 8319 (securities). Reference will be to the sections of the codes as they read in 1962.

[3]The complete finding reads: "As to [landowners'] special plea of the Statute of Frauds, the court finds that the same is not applicable. Comment: The statute of frauds defense based on the oral nature of the contract between [landowners] and [logger] does not apply because (a) [logger] as a buyer accepted part of the goods by accepting and removing 24,923 feet of logs and (b) [landowners] are estopped to raise the defense of frauds because [logger] (1) gave up a proposed logging contract with Buster Hollifield for the logging of three million feet of timber, (2) leased a loader at $1,000.00 per month to perform the agreement to [landowners], (3) engaged seven (7) employees to perform the agreement with [landowners], (4) cleared a road in the performance of the contract, (5) built a landing in the performance of the contract, and (6) cut and bucked a quantity of logs in the performance of the

in the last mentioned finding is the recital that logger gave up a proposed logging contract for the logging of 3,000,000 feet of timber. There is no evidence in the record to sustain this claim.[4]

Landowners contend before this court (a) that there was no acceptance of the goods under the statute of frauds because the goods were never delivered by them; and (b) that the logger's failure to plead an estoppel bars him from asserting it. For the reasons hereinafter set forth it is concluded that neither of these contentions has merit and the judgment should be affirmed.

## Acceptance and Receipt

Preliminarily it should be noted, as is recognized by the parties hereto, that the contract of sale in this case is governed by statutory provisions relating to the sale of personal property.　　　 "In California, under the provisions of Civil Code, sections 658 and 660, standing timber purchased separately from the land under a contract for severance, thereby becomes personalty for all purposes depending upon the contract of purchase." (*Palmer* v. *Wahler* (1955) 133 Cal. App.2d 705, 711 [285 P.2d 8] ; and see *Carey* v. *Glenco Citrus Products* (1965) 235 Cal.App.2d 572, 578-579 [45 Cal.Rptr. 365] ; *Crag Lumber Co.* v. *Crofoot* (1956) 144 Cal.App.2d 755, 777-778 [301 P.2d 952] ; *Ascherman* v. *McKee* (1956) 143 Cal.App.2d 277, 282-283 [299 P.2d 367] ; 3 Williston on Contracts (3d ed. 1960) § 516, pp. 662-666; Annotation 7 A.L.R.2d (1949) 517; *Project,* 10 U.C.L.A. L.Rev. 1087, 1095 and 1100-1101; and cf. former Civ. Code, § 1796 "Goods" with Com. Code (1965) §§ 2105, subd. (1) and 2107, subd. (2) ; see *Uniform Commercial Code,* 37 State Bar J. (1962) 117, 137.)

　　　 The question herein, therefore, is whether there was acceptance and receipt sufficient to satisfy the requirements of the statute (see fn. 2). The landowners rest on the principle that "neither receipt nor acceptance nor both receipt and

---

contract, all in reliance of the verbal contract and agreement. These acts by [logger] constituted a change of position by him so that unconscionable injury would be suffered by him if the statute of frauds were allowed to constitute a defense."

[4]The logger testified that when he was unable to finish the Sloan project he did take another job with Hollifield Lumber Company in Philo for the balance of the year and lost some money on it. He did testify that he had other things lined up to do at the time landowners first telephoned him in February 1962, but the nature or extent of these "things" was never developed.

930

acceptance can avail unless there be a delivery of the goods with the intention to vest the right of possession in the vendee and an actual acceptance by the latter with the intention to take possession as the owner." (*Wilson* v. *Hotchkiss* (1913) 21 Cal.App. 392, 404 [132 P. 88], approved *Wilson* v. *Hotchkiss* (1915) 171 Cal. 617, 618 [154 P. 1, Ann.Cas. 1917B 570, L.R.A. 1915F 389]; and see *Malone* v. *Plato* (1863) 22 Cal. 103, 104-105; *Gardet* v. *Belknap* (1851) 1 Cal. 399, 400-401; 23 Cal.Jur.2d, Statute of Frauds, §§ 46-47, pp. 278-282; 49 Am.Jur., Statute of Frauds, §§ 272-275, pp. 588-592; 37 C.J.S., Statute of Frauds, §§ 148-149, pp. 633-636; 3 Williston, *op. cit.*, § 551, pp. 880-882.)

They assume that the sole evidence to show a "delivery" is the evidence of the alleged statements, charged to the land-owners, that logger was told "to get started." From this premise it is concluded that the evidence is insufficient because they assert, this state follows the doctrine "that where delivery and change of possession are necessary to comply with the statute of frauds, an oral declaration does not alone constitute such delivery." (*Wilson* v. *Hotchkiss, supra,* 171 Cal. 617, 619, analyzing *Gardet* v. *Belknap, supra,* 1 Cal. 399; *Malone* v. *Plato, supra,* 22 Cal. 103; and the leading case of *Shindler* v. *Houston* (1848) 1 N.Y. 261 [49 Am.Dec. 316].)

Neither the premise nor the conclusion withstand scrutiny. In *Wilson* v. *Hotchkiss,* the declarations were those of the purchaser who was in possession of the goods as pledgee at the time of sale. The court said in reference to the forgoing principle as enunciated in the cases noted: "With the soundness of these declarations as bearing upon the facts to which they were applied, no criticism can be made. But what were the essential facts? They were that for their validity each contract required a delivery of the article sold, and the holding is merely that the language of the vendor that 'the property is yours,' or the language of the vendee, 'I will take the property,' does not measure up to the requirement of the statute. This principle and these decisions have no bearing on or relationship to cases such as the one at bar—cases where the actual possession is in the vendee and the real question is whether that possession has been transformed from that of bailment or pledge to that of complete ownership. Where a sale is made to a vendee in possession, whatever may have been the nature of his prior possession, the law does not require a quitting of it and a retaking of possession as the new owner. (*Snider* v. *Thrall,* 56 Wis. 674 [14 N.W. 814].) All that is

required is evidence showing that the possession is retained by the vendee in his new capacity of owner. And what evidence will establish this? Manifestly it may be established by proof of acts of dominion over the property inconsistent with his former holding as bailee or pledgee, but equally may it be established by his declarations that he so holds the property as owner." (171 Cal. at pp. 619-620; and for a general criticism of the unqualified application of the *Shindler* rule see 3 Williston, *op. cit.*, § 554, pp. 886-891.)

Here the vendors, not the vendee, are to be charged. Application of the converse of the last-mentioned principle to them indicates that evidence of their subsequent acts and declarations, which were inconsistent with the claim that no contract of sale was effected, would be material and competent even though the bulk of the timber stood on their property.

"[T]he receipt or possession which the contract requires must be obtained with the assent of the seller." (3 Williston, *op. cit.*, § 552, p. 882; 49 Am.Jur., *op. cit.*, § 273, p. 590; 37 C.J.S., *op. cit.*, § 150, p. 636; and cf. *Freyberg* v. *Los Angeles Brewing Co.* (1906) 4 Cal.App. 403, 405 [88 P. 378].) Therefore, if the entry and removal of timber by the logger was a trespass, those acts could not serve to satisfy the requirements of the statute of frauds.

The presumption that a person is innocent of crime or wrong (Code Civ. Proc., § 1963, subd. 1), and the penalties attendant to an unauthorized taking of timber (Civ. Code, § 3346; and see *Drewry* v. *Welch* (1965) 236 Cal.App.2d 159, 171-181 [46 Ca.Rptr. 65]) suggest that entry to secure the timber, coupled with proof of the oral statements, would establish a lawful reduction to possession sufficient to satisfy the statute. (See *Leonard* v. *Medford* (1897) 85 Md. 666, 673 [37 A. 365, 37 L.R.A. 449].) A license to enter and remove the timber will be implied from an agreement to sell it. (See *Carey* v. *Glenco Citrus Products, supra,* 235 Cal.App.2d 572, 580; and *Williams* v. *General Elec. Credit Corp.* (1958) 159 Cal. App.2d 527, 532-533 [323 P.2d 1046].)

This approach is suspect because it relies upon the very agreement that must yet be established for authorization for the act said to furnish substantiation of the existence of the agreement. It is unnecessary for the logger to rest on this premise because the evidence supports implied findings that the entry and removal of the timber were with the subsequent assent of the landowners.

Although disputed, there is evidence that on the Monday

following the making of the oral agreement, the landowners were apprised that logger was moving equipment on the property to commence operations and lodged no protest. There was also evidence to rebut the landowners' allegations that they had no knowledge of logger's operations until the eve of the time he was ordered to cease operations. Other evidence sustains the court's finding "that . . . [landowners] found another party who would give them a higher percentage of the gross sales price of their timber and handle the cutting, logging and sale on about the same terms otherwise." From the foregoing it may be inferred that logger was ordered off the property, not because there was no contract, but because landowners desired to make a more profitable arrangement.

It is concluded that there is sufficient evidence to show that the logger entered with the knowledge and permission of the landowners and commenced to reduce the goods to possession by felling the timber. Such circumstances constitute the requisite acceptance and receipt under the statute of frauds. (*Leonard* v. *Medford, supra,* 85 Md. 666, 672-673; *Marshall* v. *Green* (1875) Law Reports, Vol. I, C.P.D. 35; but cf. *Smith* v. *Surman* (1829) 9 B. & C. 561, 109 English Reports 209; Annotation 4 A.L.R. (1919) 902, 913; 49 Am.Jur., Statute of Frauds, §§ 277-278, pp. 592-595; 3 Williston, *op. cit.,* § 558, pp. 899-904.)

The question of acceptance and receipt where goods are in the possession of, or on the lands of, the seller, is somewhat akin to the problem of whether or not there has been a delivery sufficient to defeat the claims of creditors of the seller. (See Civ. Code, § 3440.) The following comments are pertinent: "The acts that will constitute a delivery, will vary in the different classes of cases, and will depend very much upon the character and quantity of the property sold, as well as the circumstances of each particular case. The same acts are not necessary to make a good delivery of a ponderous article, like a block of granite or a stack of hay, as would be required in case of an article of small, bulk, as a parcel of bullion. It might properly be required, that there should be a manual delivery of a single sack of grain at the moment of its sale, but upon the sale of two thousand sacks, this could not be done without incurring great and unnecessary expense, and departing from the usual course of business. The same is true of the acts that may be requisite to manifest the actual and continued change of possession required by the statute. Each case must, in a great manner, depend upon its own circum-

stances.'' (*Lay* v. *Neville* (1864) 25 Cal. 545, 552-553; see *Walden* v. *Murdock* (1863) 23 Cal. 540, 552-553 [83 Am.Dec. 135]; cf. *Malone* v. *Plato, supra,* 22 Cal. 103, 104-105; and *Gardet* v. *Belknap, supra,* 1 Cal. 399, 401-402.)

 The receipt and acceptance of a portion of the goods having been established, the contract may be enforced for the whole of the goods which are the subject thereof. (*Samuels* v. *L. A. Mattress Co.* (1951) 102 Cal.App.2d 827, 829 [228 P.2d 593]; *Platt* v. *Union Packing Co.* (1939) 32 Cal.App.2d 329, 334 and 336-337 [89 P.2d 662]; 3 Williston, *op. cit.,* § 561, pp. 909-914; but cf. Commercial Code (1965) § 2201, subd. (3) (c), California and official comment thereon; and 10 U.C.L.A. L.Rev., *op. cit.,* at pp. 1104-1105.)

*Estoppel*

The estoppel pertinent to this case is the estoppel referred to in *Monarco* v. *Lo Greco* (1950) 35 Cal.2d 621 [220 P.2d 737], wherein the opinion recites: ''The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract [citations], or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. [Citations.] In many cases both elements are present. Thus not only may one party have so seriously changed his position in reliance upon, or in performance of, the contract that he would suffer an unconscionable injury if it were not enforced, but the other may have reaped the benefits of the contract so that he would be unjustly enriched if he could escape its obligations. [Citations.]'' (35 Cal.2d at pp. 623-624.)[5]

Landowners contend that logger was barred from asserting that they were estopped to raise the statute of frauds because he failed to plead an estoppel as required by the following doctrine: ''As a general rule, a party who has an

---

[5]The application of this doctrine to an oral contract for the sale of goods, and the cases bearing thereon, are reviewed in *Irving Tier Co., Inc.* v. *Griffin* (1966) 244 Cal.App.2d 852, 857-862 [53 Cal.Rptr. 469]; see also *Associated Creditors Agency* v. *Haley Land Co.* (1966) 239 Cal. App.2d 610, 616-617 [49 Cal.Rptr. 1]; 3 Williston on Contracts (3d ed.) § 553A, pp. 793-810.

934

opportunity to plead an estoppel on which his cause of action or defense depends must do so, and failure in that respect constitutes a waiver of the estoppel. [Fns. omitted]." (18 Cal.Jur.2d, Estoppel, § 13, p. 411; and see *Fair Oaks Bank* v. *Johnson* (1926) 198 Cal. 196, 201 [244 P. 335]; *Williams* v. *Galloway* (1962) 211 Cal.App.2d 302, 305 [27 Cal.Rptr. 438]; *Marks* v. *Bunker* (1958) 165 Cal.App.2d 695, 699 [332 P.2d 340]; *Fleishbein* v. *Western Auto Supply Agency* (1937) 19 Cal.App.2d 424, 427 [65 P.2d 928]; *Fritz* v. *Mills* (1909) 12 Cal.App. 113 [106 P. 725]; 31 C.J.S., Estoppel, § 153(1), pp. 743-749; 2 Witkin, Cal. Procedure (1954) Pleading, § 548, p. 1546; Annotation 120 A.L.R. (1939) 8, 9-29.)

▮ "The principle relied on by appellant that an estoppel must be specially pleaded is without application in cases where the party in whose favor it exists is without knowledge that his claim must ultimately rest upon it. As a plaintiff is not advised of the defenses that may be pleaded, he is not required to plead an estoppel in order to overcome any affirmative matter set up in the answer or by way of defense. (*McCreery* v. *Charlton,* 185 Cal. 37, 42 [195 P. 670]; *Llewellyn Iron Works* v. *Abbott Kinney Co.,* 172 Cal. 210, 213 [155 P. 986].)" (*First Nat. Finance Corp.* v. *Five-O Drilling Co.* (1930) 209 Cal. 569, 576 [289 P. 844]; and see *Davies* v. *Langin* (1962) 203 Cal.App.2d 579, 583 [21 Cal.Rptr. 682]; *Taylor* v. *Odell* (1942) 50 Cal.App.2d 115, 125 [122 P.2d 919]; *Corporation of America* v. *Harris* (1935) 5 Cal.App.2d 452, 462 [43 P.2d 307]; 18 Cal.Jur.2d, Estoppel, § 13, p. 411; 31 C.J.S., Estoppel, § 153(3)(b), pp. 751-753; 2 Witkin, *op. cit.,* Pleading, § 549, pp. 1547-1548; Annotation 120 A.L.R., *supra,* 8, 76-84.) In *Taylor* v. *Odell, supra,* the opinion notes: "There is no merit in its contention that plaintiffs failed to plead an estoppel. The answer pleads the statute of frauds and a replication thereto was not required under our practice." (50 Cal.App.2d at p. 125; and see Code Civ. Proc., § 462.)

▮ Reference to the record in this case reflects that the original complaint filed by landowners was for treble damages for trespass. (See *Drewry* v. *Welch, supra,* 236 Cal.App.2d 159, 171-172.) In his answer and cross-complaint logger set up the oral contract. The contract as alleged was "effective for all purposes until, in an attempt to enforce it by action, its invalidity is urged as a defense." (1 Witkin, Summary of Cal. Law (1960) Contracts, § 88, p. 95; *Mangini* v. *Wolf-schmidt, Ltd.* (1961) 192 Cal.App.2d 64, 73 [13 Cal.Rptr.

503]; *Offeman* v. *Robertson-Cole Studios, Inc.* (1926) 80 Cal.App. 1, 12-13 [251 P. 830].)

In the cross-complaint logger additionally alleged some of the facts which were ultimately found by the court to evidence the estoppel which defeated the application of the statute of frauds. These same facts were incorporated by reference into logger's answer. The facts pleaded appear to comply with the requirements which landowners assert. It is the facts themselves, not the conclusions which are important. *Burrow* v. *Carley* (1930) 210 Cal. 95, 103-104 [290 P. 577]; *Beardsley* v. *Clem* (1902) 137 Cal. 328, 331-332 [70 P. 175]; *Carpy* v. *Dowdell* (1897) 115 Cal. 677, 687-688 [47 P. 695]; 2 Witkin, Cal. Procedure (1954) Pleading, § 549, p. 1547; 31 C.J.S., Estoppel, § 153(3)c, p. 753; Annotation 120 A.L.R. *supra,* 8, 84-86.)

Landowners did not mention the statute of frauds in their answer to the cross-complaint. Nevertheless the issue could be raised under the denial of the contract contained in the answer to the cross-complaint. (*Howard* v. *Adams* (1940) 16 Cal.2d 253, 257 [105 P.2d 971, 130 A.L.R. 1003]; *Walsh* v. *Standart* (1917) 174 Cal. 807, 810 [164 P. 795]; *Feeney* v. *Howard* (1889) 79 Cal. 525, 536 [21 P. 984, 12 Am.St.Rep. 162, 4 L.R.A. 826]; 23 Cal.Jur.2d, Statute of Frauds, § 150, pp. 440-442.) They accepted and joined in a pretrial statement which referred to the verbal agreement, and contained no mention of the statute of frauds.

Thereafter, the case went to trial. No objection was made to the evidence offered by logger to show the existence of the oral agreement. The landowners thereby waived their right to rely on the provisions of the statute of frauds. (*Pao Ch'en Lee* v. *Gregoriou* (1958) 50 Cal.2d 502, 505-506 [326 P.2d 135]; *Howard* v. *Adams, supra,* 16 Cal.2d 253, 257-258.) In *Bank of America* v. *Hutchinson* (1963) 212 Cal.App.2d 142 [27 Cal. Rptr. 787], the opinion recites: ''Appellants' second assignment of error is founded upon the provisions of section 1974 of the Code of Civil Procedure which provides: 'No evidence is admissible to charge a person upon a representation as to the credit of a third person, unless such representation, or some memorandum thereof, be in writing and either subscribed by or in the handwriting of the party to be charged.'

''Assuming for the purposes of this opinion that the last quoted section would have been applicable to the facts of the instant case, appellants are now foreclosed by the fatal fact

that they tried their entire case without making any objection whatsoever to the reception of such evidence, although it was apparent throughout the trial, and prior thereto, (as witnessed by the joint pretrial statement) that respondents were relying upon said oral representations. [Citations.] " (212 Cal.App.2d at pp. 148-149.)

Moreover, no objection was made to the introduction of evidence of the acts of logger upon which the finding of estoppel was later predicated. If the pleadings were insufficient before, any objection was waived by the failure to object to the admission of this evidence. (*Pacific Finance Corp.* v. *Foust* (1955) 44 Cal.2d 853, 858 [285 P.2d 632]; *Robison* v. *Hanley* (1955) 136 Cal.App.2d 820, 824 [289 P.2d 560]; *Chain* v. *Ehrman* (1928) 92 Cal.App. 334, 337 [268 P. 438]; 31 C.J.S., Estoppel, § 153(3)c, pp. 754-756; Annotation 120 A.L.R., *supra,* 8, 87-92.)

Landowners seek to avoid the effect of the last-mentioned principle because the cases referred to recite that the issue of estoppel was litigated, whereas, they allege, in this case it was not. This premise assumes that the trial ended with the taking of evidence, rather than with the signing and entry of judgment. It was true that there was no mention of estoppel in the record, other than the facts themselves which logger had set forth in the cross-complaint and had supported by his proof. Nor, however, was there any mention of the statute of frauds during the three days on which testimony was received. The reporter's transcript closes with a reference that the matter was continued until November 8, 1963, and that it was anticipated that the matter would be ready for submission then.

The first mention of the statute of frauds is an amendment to answer to cross-complaint executed November 8, 1963, and filed with the permission of the court on "December 6, 1962 [*sic* 1963]." It states: "SPECIAL DEFENSE Allege that the enforcement of the cause of action alleged and set forth in cross-complainant's cross-complaint is barred by the provisions of Civil Code, Sections 1624(a) [*sic*] and 1724."

On May 14, 1964, the court signed and filed a written opinion which states that the statute of frauds was not applicable because the oral contract was partially performed and because the agreement was a joint venture which could be established by an oral agreement. Findings on this theory were filed with the court, and landowners filed their exceptions and request for special findings on June 1st. The findings in which estoppel is mentioned for the first time were thereafter signed

and filed on July 24th. They include a comment on the trial judge's change of theories.

The facts were all fairly adduced. Landowners cannot complain that the court drew conclusions from them that were unfavorable to and perhaps unexpected by them. Their special defense placed in issue all matters which would contradict that defense. (Code Civ. Proc., § 462.)

They state: "In the absence of an express understanding between counsel and court that evidence offered for a particular purpose is to be limited to such purpose, the court is authorized to consider it for any purpose for which it is competent and relevant, *though not, of course, in connection with any question not involved in the issues.*" (18 Cal.Jur.2d, Evidence, § 125, p. 567; italics appellant's; and see *Miller* v. *Peters* (1951) 37 Cal.2d 89, 93 [230 P.2d 803]; *Riverside Water Co.* v. *Gage* (1895) 108 Cal. 240, 244-246 [41 P. 299]; *White* v. *Merrill* (1899) 82 Cal. 14, 16 [22 P. 1129].) Reliance upon this line of authority proves fruitless because the trial in fact embraced all considerations warranted by the facts which would bear upon the applicability of the statute of frauds. Landowners themselves having failed to raise that defense until the conclusion of the taking of evidence cannot complain that they were prejudiced by inability to produce other testimony on the issues thereby raised. Moreover, they have not shown by motion for new trial, or otherwise, that there exists any other evidence bearing upon the facts alleged and proved by logger, and ultimately used to establish the estoppel.

In arguing that the evidence which established these facts was offered and received solely on the issue of logger's performance, they are again revealing their failure to object to the admission of evidence of the oral contract. As noted above, this may well have eliminated the statute of frauds from the case. Logger has not pressed any objection to the amendment which was permitted by the court despite this waiver, and, therefore, that matter is not relied on herein as dispositive of the case.

The issue of estoppel was properly before the trial court, and its findings thereon were sustained by the evidence.

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.